R. H. Roussey and Ida I. Roussey v. Commissioner.
Roussey v. Commissioner
Docket Nos. 91667, 92270.
United States Tax Court
T.C. Memo 1963-254; 1963 Tax Ct. Memo LEXIS 90; 22 T.C.M. (CCH) 1263; T.C.M. (RIA) 63254; September 18, 1963
Arthur A. Armstrong, 458 S. Spring St., Los Angeles, Calif., for the petitioners. Donald D. Winn, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined deficiencies in the income tax of petitioners as follows: Docket
No.
Year
Deficiency
91667
1956
$ 6,119.90
91667
1957
11,585.99
92270
1958
11,248.62
92270
1959
4,999.48 The only issue is whether the "revolution" of revolving fund credits held by petitioners constitutes a "sale or exchange" within the capital gains provisions of the Internal Revenue Code of 1954. Findings of Fact Some of the facts have been stipulated and are so found Petitioners, R. H. Roussey and Ida I. Roussey, husband and *91 wife, reside in Oxnard, California. They filed joint Federal income tax returns for the calendar years 1956, 1957, 1958, and 1959 with the district director of internal revenue, Los Angeles, California. Exchange Lemon Products Company (hereinafter referred to as ELPC) was a cooperative marketing association existing pursuant to the provisions of Chapter 4, Division 6, Agricultural Code of the State of California. Since its inception in 1915, the principal purpose of ELPC was to discover, develop, produce, and market lemon products created as a by-product from the normal marketing of fresh lemons. Its products include such items as frozen lemon concentrate, pectin, citric acid, lemon oils, and lemon juice products. Effective October 31, 1958, the activities of ELPC were taken over by Sunkist Growers, Inc. In accordance with established industry practice, ELPC utilized the revolving fund plan for acquisition of funds to operate its business. The fund was acquired either by assessment against the members or by the retention of a specific sum from the proceeds of the members' fruit processed through the company. As additional funds are acquired from members and patrons, either by assessment *92 or retention, so that the total amount in the fund exceeds the requirement of the company or a fixed dollar amount, the company causes the fund to "revolve" by paying the holders of the oldest revolving fund credits the face amount of their credits. From the date of its incorporation in 1915 until the filing of the Fourth Amended Articles of Incorporation on December 5, 1953, ELPC was a nonprofit corporation having capital stock which was sold and issued in accordance with agreements entitled "Agreement Subscribing for Stock and Creating Exchange By-Products Company Revolving Fund." Stock was represented by stock certificates maintained in a capital stock ledger and on stock priority lists. In accordance with the reorganization of ELPC under Chapter 4, Division 6, Agricultural Code of the State of California, the Articles of Incorporation provided for the creation of a single "Revolving Fund," and further provided that the cooperative is organized without capital stock. The former stock of the members, as well as any credits in the former operating capital fund, were converted into and became credits in the newly established revolving fund. Such credits retained their value and *93 priority of payment based upon the year of their original issue, notwithstanding the conversion. ELPC discontinued the use of such business records as stock certificates, stock ledgers, and stock priority lists. Article Ten of the Articles of Incorporation of ELPC, as amended December 9, 1953, provides as follows: TENTH: The property rights and interests of the members shall be unequal. The property rights and interests of any member at any time shall be such part of the entire property rights and interests as the amount of revolving fund and other allocated reserve credits standing upon the books of the Association in the name of such member at that time bears to all such credits on said books in the name of all members at such time. Provided, however, that said revolving fund or allocated reserve credits shall not be deemed to evidence, create or establish any property rights or interests, as such terms are herein used, but such credits shall be deemed to evidence an indebtedness of the Association payable only as provided in the by-laws. Section 8.01 of the By-Laws set forth the purpose of the revolving fund as follows: A fund, to be known as the "revolving fund" is hereby *94 created for the purpose of furnishing an equitable basis, in accordance with established industry practice, for acquiring capital to operate the business of the Association with contributions related to shipments of citrus fruit by the members and other patrons. Section 8.11 of the By-Laws describes the nature of the revolving fund credits as follows: Revolving fund credits * * * shall be deemed due evidence of indebtedness of the Association to the respective persons to whom credited, to be paid solely upon the conditions and at the time and times herein provided. No interest shall be payable on or in respect of said revolving fund credits. Other provisions of the By-Laws relating to the revolving fund credits may be summarized as follows: 1. The revolving fund credits entitled the member to one vote for each $100 of revolving fund credits outstanding on the books of ELPC. However, the holder of such revolving fund credits had no voting rights unless such holder was a member of ELPC. 2. Not later than eight and one-half (8 1/2) months after the close of each fiscal year, ELPC was required to furnish each holder of revolving fund credits with a statement showing the dollar *95 amount of revolving fund credits standing on the books of the cooperative in the name of each patron and the amount thereof which accrued during such fiscal year. (The statements provided on their faces that they were nonnegotiable). 3. Revolving fund credits could be assigned or transferred at any time by the execution of a written assignment on a form provided by the cooperative and the delivery thereof to the secretary of the cooperative. No transfer was complete until entered upon the books of the cooperative. (ELPC kept a register of all the holders of revolving fund credits). 4. In the event ELPC sustained a substantial loss, the board of directors could, in its discretion, charge any portion of that loss to current operating expenses, to revolving fund credits for the fiscal year in which the loss was incurred or pro rata to all revolving fund credits for all years. 5. In the event of dissolution of the cooperative, all of the indebtedness represented by revolving fund credits was to be deemed due but not payable until all other indebtedness of the cooperative was paid or adequately provided for. Payment of the revolving fund credits, without regard to priority of revolution, *96 was to take priority over payment of amounts due under other allocated reserves. 6. Any residue, in the event of dissolution, would be distributed to those who were members of ELPC in proportion to the amount of their revolving fund credits at the time of dissolution. No holder of revolving fund credits was eligible to participate in such a residual distribution unless such holder was a member of ELPC at the time of dissolution. Section 8.21 of the By-Laws provides for the revolution of the fund as follows: 8.21. REVOLUTION OF FUND. When the aggregate of all outstanding unpaid revolving fund credits equals ten million dollars ($10,000,000) the board of directors shall commence to revolve funds out as follows. At least once a year, as additional funds are made available through assessments or deductions, the amount of said funds in excess of ten million dollars ($10,000,000) shall be paid out to retire the oldest unpaid revolving fund credits. In determining the said oldest credits, all credits from the same fiscal year shall have the same priority and if there are not sufficient monies available for all credits for any fiscal year, a pro-rata payment shall be made against all *97 of the credits of such fiscal year. Nothing herein contained shall be construed to prohibit the board of directors from revolving out such amounts as it may deem advisable from time to time, notwithstanding that said fund may not have reached said maximum limit. In 1952 R. H. Roussey (hereinafter referred to as petitioner), a real estate and insurance broker, purchased all of the outstanding capital stock of Culbertson Investment Company (hereinafter referred to as CIC). For a number of years prior to that time CIC, a privately held profitmaking California corporation, had been engaged in various farming activities in Ventura County, California, and had owned citrus orchards in Ventura County on which it had raised lemons. In years prior to 1951, CIC owned and operated a lemon packing house which was affiliated with and a member of Sunkist Growers, Inc., and ELPC. Some of the lemons grown by CIC were processed through its own packing house while others were processed through local cooperative packing houses affiliated with Sunkist and ELPC. Upon acquisition of the CIC stock in 1952, petitioner caused CIC to be dissolved and its assets to be distributed to him. The assets of CIC *98 distributed to petitioner in complete liquidation consisted principally of farm and orchard lands and revolving fund credits in certain agricultural cooperative associations. Such revolving fund credits had been acquired by CIC as a result of its various activities within the citrus industry. Among the revolving fund credits acquired by petitioner were credits in ELPC, Ventura County Citrus Exchange, Saticoy Lima Bean Growers Association, and Sunkist Growers, Inc. During the years 1956 through 1959, these agricultural cooperative associations "revolved" certain of the revolving fund credits. As a result of the revolutions, petitioner received the following sums in excess of the basis of such revolving fund credits for determining gain or loss for income tax purposes: Cooperative
1956
1957
1958
1959
Exchange Lemon Products Co.
$7,789.23
$7,323.64
$18,006.13
$866.74
Ventura County Citrus Exchange
23.77
Saticoy Lima Bean Growers Association
60.41
Sunkist Growers, Inc.
115.40
In their Federal income tax returns for the years in issue petitioners reported the gains set forth above as long-term capital gains. In his notice of deficiency *99 respondent determined that such gains represented ordinary income. [1]
Petitioner was not a member of ELPC. The revolving fund credits issued by ELPC and distributed to petitioner in complete liquidation of CIC were personal property having characteristics of both debt and equity which were capital assets in his hands and which were held by petitioner for more than six months prior to their revolution. Opinion This is a companion case to Greenvine Corporation, 40 T.C. - (September 6, 1963), wherein we held that the revolving fund credits issued by ELPC have basic characteristics of both stock and indebtedness, the revolution of which, in either event, constituted an exchange under sections 302(a) and 1232(a)(1), Internal Revenue Code of 1954, entitling the taxpayer, a nonmember of ELPC, to capital gains treatment. Therefore, the decision in Greenvine is dispositive *100 of the issue here. To take into account other adjustments disposed of by agreement of the parties, Decisions will be entered under Rule 50. Footnotes
1. It is stipulated that the Court's decision with respect to the revolving fund credits of ELPC shall determine the character of the gains realized with respect to the revolving fund credits of Ventura County Citrus Exchange, Saticoy Lima Bean Growers Association, and Sunkist Growers, Inc.↩